J-A29011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NORMAN WERTHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FIRSTRUST BANK, GARNISHEE | : | |
| | : | |
| | : | No. 1088 EDA 2018 |
| APPEAL OF: ELLEN WERTHER, | : | |
| ASSIGNEE OF NORMAN WERTHER | : | |

Appeal from the Order Entered March 9, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  1539 April Term, 2001

BEFORE:   OTT, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:                              **FILED MAY 1, 2019**

Ellen Werther, assignee of Norman Werther, deceased (Werther), appeals from the order entered March 9, 2018, in the Court of Common Pleas of Philadelphia County.  Along with this order, Werther also appeals a number of prior orders that supported the March 9, 2018, order.   The orders in question dissolve writs of garnishment filed with FirsTrust Bank (the Bank) against co-defendant, Craig Rosen.[1]  The writs were part of an ongoing and largely futile attempt to collect the underlying judgment from Rosen.   Of

---

* Former Justice specially assigned to the Superior Court.

[1] In the underlying matter, Norman Werther, MD, obtained a $4,999,342.00 judgment against Rosen regarding financial dealings between Werther and Rosen.

particular relevance, the order of May 18, 2017, also appealed from, denied Werther's motion for partial summary judgment and determined the Bank did not violate Pa.R.C.P. 3111 by cashing a series of checks payable to Rosen. All issues raised by Werther in this appeal hinge upon the resolution of the May 18, 2017,[2] order that determined the Bank had properly cashed the checks for Rosen, despite the writs.[3] After a thorough review of the submissions by the parties, relevant law, and the certified record, we reverse, in part, vacate, in part, and remand for further proceedings.

We relate the underlying facts as taken from the trial Court's opinion in response to Werther's motion for partial summary judgment.

_____

[2] This order was docketed on May 19, 2017.

[3] The four issues raised by Werther are (reworded to economize space):

> 1) Did the Bank violate Pa.R.C.P. 3111 when it repeatedly cashed checks for Rosen after being served multiple writs of execution. (Did the trial court misapply **Witco Corp. v. Herzog Bros. Trucking, Inc.**, 863 A.2d 443 (Pa. 2004)?
>
> 2) Did the trial court err in denying Werther partial summary judgment against Bank in the amount of $188,000, representing 23 checks cashed, after being served with multiple writs of execution and the Bank having filed multiple Suspicious Activity Reports with the IRS?
>
> 3) Did the trial court err in refusing to grant reconsideration of the order denying partial summary judgment?
>
> 4) Did the trial court err in dissolving the writs, refusing discovery and refusing to schedule a trial?

**See** Werther's Brief at 2-3

In May, 2008, plaintiff Norman Werther, M.D., obtained a judgment of almost $5 million against Craig Rosen, which Dr. Werther has been trying to collect ever since. Mr. Rosen has not made collection easy, and he deliberately evaded Dr. Werther's collection efforts on occasion.

As reflected on this court's docket, in July 2008, and again in September, 2008, Dr. Werther caused a Writ of Execution against Craig Rosen to be served on garnishee FirsTrust Bank ("FirsTrust"). FirsTrust answered the Interrogatories served with the first two Writs and identified two bank accounts held by Mr. Rosen and his wife as tenants by the entireties and therefore exempt from execution. No other property of the debtor was identified by FirsTrust, and it does not appear there was any such property in 2008. FirsTrust requested in its Answers to Interrogatories that the Writs be dissolved, but they never were. The second Writ of Execution, which is still in effect, was directed to "any and all real or personal property of the defendants in the name of the garnishee."

In October 2010, a company named Weinerman Pain and Wellness, LLC ("WPW") opened an account at FirsTrust. Mr. Rosen was listed as both an applicant and cosigner on the WPW account. Mr. Rosen was apparently a 1099 employee of WPW and received regular paychecks from WPW for approximately two years from 2011-2013.

From September 1, 2013, through December 11, 2013, Mr. Rosen cashed employment checks drawn on, or withdrew money from, the WPW account at FirsTrust in a total amount of $196,700. Many of the checks were in the amount of $9,900, just shy of the $10,000 cash limit at which FirsTrust would be required to report such transactions to the IRS. FirsTrust's tellers handed the cash over to Mr. Rosen each time he brought in a WPW check made out to himself, and apparently no thought was given to the outstanding Writs of Execution lingering somewhere in FirsTrust's files.

Both parties would likely agree that what Mr. Rosen did was wrong, in that he was deliberately evading both judgment creditors and the IRS. However, the question before this court is whether FirsTrust did anything wrong, not Mr. Rosen. In Dr. Werther's view, FirsTrust should have acted in accord with the outstanding Writs; each time the teller was asked to convert a

- 3 -

check to cash, the teller should have seized the check or the cash on behalf of Dr. Werther, the judgment creditor, rather than handing the cash over to Mr. Rosen. FirsTrust argues that it was obligated instead to hand the cash to Mr. Rosen, since it was his wages, and it would be extremely impractical to require every bank teller to consult a list of every writ the bank had received over a five year period whenever the teller cashed a check at his/her window.

Trial Court Opinion, 5/18/2017, at 1-3.

Although Werther has raised four issues in this appeal, they all revolve around the first issue, whether the trial court was correct in determining, as part of Werther's motion for partial summary judgment, the bank violated no obligation regarding the Writs of Execution when cashing the checks for Rosen.

Our standard of review of an order granting or denying summary judgment is well settled:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super. 2016) (citation omitted).

Instantly, there is no dispute over the factual underpinnings. Werther obtained a large monetary judgment against Rosen, who has failed to satisfy that judgment for years. In an effort to obtain satisfaction, Werther served multiple Writs of Execution against Rosen with the Bank. There is also no dispute that while the Bank was cashing checks on behalf of Rosen, it was

filing multiple SARs (suspicious activity report) with the IRS owing to Rosen's repeated cashing of checks just below the $10,000 limit required for reporting cash transactions to the IRS. Despite the existence of the writs, Rosen cashed multiple checks at the Bank, drawn on an account for which Rosen was a signatory. What is at issue is the applicability of ***Witco Corp. v. Herzog Bros. Trucking, Inc.***, 863 A.2d 443 (Pa. 2004), to the instant matter.

In ***Witco***, plaintiff/appellant Witco obtained a judgment against Herzog Brothers for more than $500,000. Herzog Brothers apparently did business with National City Bank of Pennsylvania. In an effort to collect the judgment, Witco served a writ of execution upon the bank. While the writs were active, Gary Herzog, president and sole shareholder of Herzog Brothers, used personal checks and cash to purchase at least 131 cashier's checks valued in excess of $6,000,000 on behalf of Herzog Brothers. There was no dispute that personal checks and cash used by Gary Herzog were, in fact, Herzog Brothers' property. Incidental to these purchases, the bank collected fees of $22,718.86.

Based upon the foregoing, our Supreme Court determined the bank possessed the check Gary Herzog presented to the bank and further, had the power to control Herzog Brothers' access to those funds and the manner in which they were disbursed. ***See*** Pa.R.C.P. 3101(b)(2). Additionally, the brief length of the transaction was no bar to the enforcement of the writ of execution, nor was the fact none of the checks or cash was ever deposited into a Herzog Brothers account. Of import to the Supreme Court was the fact

that the bank was on notice, having been served with a writ of execution, that it possessed property of the debtor, and nevertheless, the bank "processed more than $6 million in cash and checks exchanged for at least 131 of the bank's cashier's checks – without any consideration for its lawfully imposed duty as garnishee." *Witco*, 863 A.2d at 448.[4]

We take particular notice of two issues addressed by our Supreme Court in *Witco*. The first is the public policy statement.

> It is plain that the Bank and Herzog Brothers engaged in an extended course of conduct that permitted Herzog Brothers to avoid garnishment of its assets. Whether it was the Bank's and/or Herzog Brothers' deliberate intent to subvert the writ of execution and subsequent garnishment obligation matters less than the fact that such was clearly the result. By using cashier's checks instead of checks drawn on its own accounts, Herzog Brothers successfully processed more than $6 million dollars of its funds and used those funds to pay its obligations to creditors other than Witco without depositing one penny of those funds into its accounts with the Bank.
> …
>
> [T]he public policy of Pennsylvania prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets.

*Id.* at 450-51.

---

[4] We are also aware that the *Witco* decision discussed Pa.R.C.P. 3111(c) (now Rule 3111(d)) that speaks of the garnishee being restrained from "paying any debt to or for the account of the defendant and from delivering any property which may be attached under these rules to anyone except the sheriff…".

Next, and of equal import, is the Supreme Court's discussion of possession of the checks.

> [Pa.R.C.P.] Rule 3101(b)[5] unambiguously provides that a garnishee is deemed to be in possession of property of property of the defendant if the garnishee "has the property of the defendant in or her custody, possession or control." Black's Law Dictionary (8th Ed. 2004) defines possession as: "The fact of having or holding property in one's power; the exercise of dominion over property." Here, when Herzog Brothers purchased cashiers' checks from the Bank, the Bank came into physical possession of the personal checks and cash proffered by Gary Herzog. The Bank then had the power to control Herzog Brothers' access to those funds and the manner in which those funds were disbursed. … Thus, applying the common and approved definition of the term "possession," we conclude that the Bank was in possession of the checks and cash once Herzog handed them over to the Bank's tellers, for the purposes of Rule 3101(b), notwithstanding that Herzog did not formally deposit the funds into Herzog Brothers' account with the Bank.

*Id.* at 446-47.

The trial court rejected application of **Witco**, distinguishing it from the instant matter in three ways. First, the trial court opined, "the checks presented by Mr. Rosen … were drawn on a FirsTrust customer's account, not a third party bank as in **Witco**." Trial Court Opinion, 5/18/2017, at 5. The

---

5 Pa.R.C.P. 3101(b)(2) provides the relevant definition of possession of property to be applied herein. It states:

> (b) Any person may be a garnishee and shall be deemed to be in possession of property of the defendant if the person

>> (2) has property of the defendant in his or her custody, possession or control.

Pa.R.C.P. 3101(b)(2).

- 7 -

bank usually placed a hold on such checks, but did not for Herzog Brothers. Our Supreme Court noted only that this made the transactions in question "suspect." *Witco*, 863 A.2d at 448. Nonetheless, that suspicion was not dispositive, as the *Witco* Court stated, "Even if it was not the Bank's specific intent, it appears that the Bank engaged with Herzog Brothers in transactions patently calculated to thwart the garnishment process." *Id.* Frustration of the garnishment process is the salient point, not the specific method of doing so. Similarly to *Witco*, the Bank here was well aware of the garnishment and had been served multiple writs of execution, not just one as in *Witco*. Moreover, as in *Witco*, the Bank, in the present case, engaged in an extended series of transactions with the judgment debtor, without apparent concern for the writs of execution, which, as the trial court stated were "lingering somewhere in FirsTrust's files." Trial Court Opinion, 5/18/2017, at 2. The bank was aware of the judgment against Rosen, was aware of the writs, was aware that Rosen was a signatory to the account on which the checks were drawn, was aware that Rosen was regularly cashing checks in amounts that were only slightly under the IRS reporting requirement, and repeatedly cautioned Rosen about those checks. Specific intent or not, the Bank and Rosen engaged in an extended course of conduct that clearly frustrated Werther's attempts to enforce the judgment.

In addition to the foregoing, as in *Witco*, the judgment debtor has an account at the Bank. In neither instance, the checks that were presented to the Bank were not deposited in the accounts. In *Witco*, the checks were

converted into cashier's checks; instantly, the checks were converted into cash. The Bank in **Witco** claimed cashier's checks were a cash equivalent and not subject to garnishment. Our Supreme Court noted,

> The Bank devotes substantial argument to defining a cashier's check as a cash equivalent. This argument begs the question presented here – whether the Bank had possession of Herzog Brothers' property during the transaction that culminated in the issuance of the cashier's checks.

**Witco**, at 632, n 3.

Just as in **Witco**, the salient question is whether the Bank here possessed the checks that had been presented to it. Just as in Witco, the Bank here held custody, possession and control of the checks prior to converting those checks into cash and disbursing that cash to Rosen, the judgment debtor.

We look at the next two distinguishing arguments together. The trial court noted that in **Witco**, the bank violated its own internal policies by not holding the checks to ensure sufficient funds, and the bank profited from the transactions. Trial Court Opinion, 5/18/2017, at 5. Instantly, the Bank did neither. However, there is nothing in the rules that requires the garnishee deviate from usual business practices or profit from its transactions before liability attaches for failing to act on a writ of execution. The law imposes an independent duty on a garnishee to follow the law and honor the writ. This duty is not conditioned upon or dependent upon the garnishee otherwise acting with clean hands. In the instant matter, the Bank, aware of its duty

to act upon the multiple writs of execution, nonetheless, failed to do so, despite possessing and controlling, even briefly, the property of Rosen.

Finally, in addition to attempting to distinguish **Witco** from the instant matter, the trial court noted the impracticality of requiring a bank to consult a list of writs before transacting over the counter business. Trial Court Opinion at 7. The methodology of doing such is not before us, although given the electronic nature of financial transactions, it would not appear too onerous for a bank to maintain an electronic list of those against whom a writ has been filed, and to automatically match names. Further, we are unsure that convenience to the garnishee bank should override the legal duty imposed by a lawfully served writ of execution. What is clear in this matter is that under the totality of circumstances, the Bank should have been well aware of the suspect nature of the Rosen's transactions, not just in terms of the IRS, but also in avoiding the writs of execution.

Unlike **Witco**, which appears to have been a case of first impression where our Supreme Court nonetheless found the bank liable, the Bank here is on legal notice that the over the counter transactions may be subject to the garnishment process. We reiterate what our Supreme Court stated in **Witco**: "[T]he public policy of Pennsylvania prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to

avoid the lawful garnishment of its assets."[6] Despite knowledge of the writs, the suspect actions by Rosen, and the **Witco** decision, the Bank neglected its legal duty.

Because the trial court committed an error of law in failing to apply **Witco** to the instant matter, we must vacate the orders denying partial summary judgment in favor of Werther and dissolving the writs. Because we have no specific findings of fact regarding damages, we will not grant partial summary judgment for $188,000.00 in favor of Werther. Rather, we remand the matter to the trial court for application of **Witco**, and to proceed thereafter as the parties deem appropriate.[7] We need not address the issue of failure to grant reconsideration.

Order of November 10, 2016, denying Werther's motion for partial summary judgment, and order of March 9, 2018, denying Werther's motion for discovery and to set trial date and granting FirsTrust's motion to dissolve writs, are vacated. This matter is remanded to the trial court. Jurisdiction relinquished.

---

[6] **Witco**, 863 A.2d at 451.

[7] We are essentially returning this matter, procedurally, to that point just prior to the denial of the motion for partial summary judgment. How the parties proceed, what path they choose to take, is not before us and we do not presume to tell them what their next steps should be.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/19